### COVERT v. COVERT.

#### (Circuit Court of Appeals, Second Circuit. April 8, 1902.)

#### No. 89.

PATENTS—ANTICIPATION—WAGON JACKS.

> The Emons patent, No. 463,599, for a wagon jack, is void for anticipation, especially by the device of the Baillie patent, No. 310,973, which contains all the elements of the Emons device, the only material change made in the latter being that the fulcrum rod of the lever is pivoted upon the base of the standard instead of upon a ring frictionally secured to the standard itself, which was an obvious mechanical modification, and was, moreover, disclosed by the prior patents to Bratschie & Epperson.

Appeal from the Circuit Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree of the circuit court, Western district of New York, dismissing the bill. 106 Fed. 183. The suit is for infringement of letters patent No. 463,599, granted November 17, 1891, to Charles Emons for a wagon jack.

Chas. G. Coe, for appellant.
Chas. H. Duell, for appellee.

Before LACOMBE and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The specification states that the invention relates to wagon jacks, and

—"Has for its object to provide a simple and approved device of this character, of such construction as to dispense with the necessity for the provision of special locking means for retaining the jack in elevated position. A further object of the invention is to provide a simple and improved jack

of this character, which will possess advantages in point of inexpensiveness, durability, ease of operation, and general efficiency. * * * Fig. 1 is a perspective view in position for use. Fig. 2 is a side elevation, illustrating the jack as it appears in its extended position.

Fig. 1    Fig. 2

"Referring to the drawings, A designates a base plate of approximately conical shape, and from which projects a vertical tubular standard, B. The base plate is preferably cast of metal, and the standard formed of piping screwed or otherwise secured therein. Disposed within the standard, B, is a vertically movable member formed by a rod or tube, C, carrying at its upper end a head block, D, which may be provided with a series of steps, d, upon one of which the axle of a vehicle is adapted to rest. The head block is further provided with a slot, d' (not lettered in Figs. 1 and 2), at its lower rear corner, within which is adapted to be pivoted the inner end of a lever, E, by a pin or bolt, e. At about one-third the length of the lever from its inner end the same is bent at an angle to said inner portion, as shown, the purpose of which will hereafter appear. F represents a fulcrum bar or rod formed of two strips, F', F', and pivoted at its lower end to a lug, f, projecting from the base plate by a pin or bolt, f'. The upper end of this fulcrum bar is pivoted by a pin or bolt, f2, to the inner straight portion of the lever, preferably at or near the center of said portion. By supporting the fulcrum bar upon the base plate in lieu of supporting it upon the standard, it will be obvious that the weight is supported by the base plate, and greater steadiness is thus insured when the jack is in use. * * * To elevate the head block, the lever is pressed downward and then inward, until the inner portion thereof assumes a position at a contrary angle to the fulcrum to that which it normally occupies, the angle of the lever abutting against the upper end of the standard, and held there against displacement by pressure upon the head block."

The claims are as follows:

"(1) A wagon jack comprising a base plate, **a standard** projecting upwardly therefrom, a vertically moving bar working in said standard and carrying a stepped head, a lever pivoted to the latter, and a fulcrum bar or rod pivotally bearing upon the base plate and pivoted at its upper end to the lever, substantially as set forth.

"(2) A wagon jack comprising a base plate, a standard projecting upwardly therefrom and of tubular form, a vertically moving bar working in said standard and carrying a stepped head, an angular lever, substantially as described, pivoted to the latter, and a fulcrum bar pivoted to the lever between the angle thereof and the inner end, and pivotally supported upon the base plate, substantially as set forth.

"(3) A wagon jack comprising a base plate provided at one side with an upwardly projecting lug, a standard projecting centrally from the base plate and tubular in form, a vertically working bar disposed in said standard, and carrying at its upper end a head provided with a series of steps, an angular lever pivoted at the rear of said head, and a fulcrum bar pivoted to the lever between its inner end and the angle thereof, and to the lug projecting from the base plate, substantially as set forth.

"(4) As an improved article of manufacture, a wagon jack constructed of metal, and comprising a base plate provided at one side with a lug, a tubular standard secured to the base plate and projecting upwardly therefrom, a bar working in the standard and carrying at its upper end a stepped head provided at its rear lower corner with a slot, a lever pivoted at its inner end in the latter, and having its handle portion bent at an angle to the inner pivoted portion, for the purpose described, and a fulcrum bar pivoted at its lower end to the lug upon the base plate, and at its upper end to the lever between the angle thereof and its inner end, substantially as and for the purpose shown and specified.

"(5) In a wagon jack, the combination of a base, a standard secured thereto, a vertically movable member carried by the standard, a lever pivotally connected with said vertically movable member, and a fulcrum bar or rod pivotably mounted upon the base and pivotally connected with the lever, substantially as and for the purpose set forth.

"(6) In a wagon jack, the combination of a base, a standard secured thereto, a vertically movable member carried by the standard, a lever pivotally connected with said vertically movable member and formed with an angle below its inner pivoted end, and a fulcrum bar or rod pivotally mounted upon the base and pivotally connected with the lever at a point above the angle thereof, substantially as and for the purpose set forth."

The device of the patent is well described by complainant's expert as—

"A jack comprised in substantially four parts, namely: A base having a standard permanently secured thereto, and projecting upwardly therefrom; a stepped head or head block, which is placed under the axle of the wagon to be raised or jacked up, to which is permanently secured a stem called in the patent 'a vertically moving bar' adapted to slide in said standard, which is made tubular in form to receive such stem; a lever pivoted at its upper extremity to the head block, and also pivoted at a short distance from the end to an upright fulcrum bar or rod, which rod is pivotally connected with the aforesaid base."

The record shows that Emons was not the first to devise a four-part wagon jack. Of the numerous patents which have been put in evidence, it will be sufficient to consider one only, that to John D. Baillie, No. 310,973, January 20, 1885. It will be best described by reproducing the drawings, Fig. 1 being a side view of the jack, lowered

partially down, and Fig. 2 the same partially raised. The dotted lines in Fig. 2 refer to a proposed attachment, which is not material to the present cause.

J D. BAILLIE.

LIFTING JACK.

No. 310,973. Patented Jan. 20, 1885.

Inspection of these drawings shows that with the exception of the adjustable supporting collar, G, the device is practically a Chinese copy of the four-part jack of the patent in suit. A and B make up "a base having a standard permanently secured thereto, and projecting upwardly therefrom"; D D' and C make up a "stepped head or head block, which is placed under the axle of the wagon to be raised or jacked up, to which is permanently secured a stem or vertically moving bar adapted to slide in the standard, which is made tubular in form to receive such stem"; E is a "lever pivoted at its upper extremity to the head block, and also pivoted at a short distance from the end to the fulcrum bar," and which has also an angle which subserves the same purpose as in Emon's device; F is an "upright fulcrum bar or rod, pivotally connected with the lever," but which is also pivotally connected with the collar, G, instead of with the base.

Looking at the Baillie structure, it is apparent that the collar, G, which is held in position by frictional contact with the standard under

pressure of the set screw, H, is not as rigid a pivotal connection for the fulcrum rod as the base would be, or as the collar itself would be if it rested on the base. It is also apparent that by sacrificing a part of the range of elevation, secured in Baillie's device by the movable collar, such increased rigidity can be secured by merely lengthening the fulcrum rod, F, till the collar rests on the base. We are clearly of the opinion that this simple and obvious modification discloses no patentable invention, especially as the art already contained devices differing in other respects from the two we have considered, but in which a fulcrum bar or its equivalent was pivoted to the base. See the patents to Bratschie and to Epperson.

The decree of the circuit court is affirmed, with costs.